(109 App. Div. 70.)

MITTERWALLNER v. SUPREME LODGE, KNIGHTS AND LADIES OF THE GOLDEN STAR.

(Supreme Court, Appellate Division, First Department. November 24, 1905.)

ACCORD AND SATISFACTION—RECEIPT.

     Plaintiff, the holder of a benefit certificate for $1,000 in defendant order on the life of her husband, received a draft drawn on defendant's treasurer for $796.64, on the back of which she indorsed and signed a receipt for such amount "in full under this certificate," "but I accept the above amount under protest, $796.64." *Held*, that such receipt did not constitute an accord and satisfaction of plaintiff's claim under the certificate as a matter of law.

     Laughlin, J., dissenting.

Appeal from City Court of New York.

Action by Louise Mitterwallner against the Supreme Lodge, Knights and Ladies of the Golden Star. From an order of the Appellate Term affirming a judgment of the New York City Court entered on a verdict of a jury in favor of plaintiff, defendant appeals. Affirmed.

See 90 N. Y. Supp. 1076.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

W. R. Spooner, for appellant.
M. Strassman, for respondent.

INGRAHAM, J. The action was brought to recover the amount due to the plaintiff under a certificate of membership of Charles Mitterwallner, the plaintiff's husband, in the defendant corporation, whereby the defendant agreed to pay to the plaintiff, as beneficiary of her husband, the sum of $1,000 upon his death. The plaintiff's husband died on the 29th day of July, 1900. The complaint alleges that thereby there became due to the plaintiff from the defendant the sum of $1,000, to-

gether with the sum of $46.64 additional assessments; that the defendant had paid to the plaintiff the sum of $750 on account of the $1,000, together with the additional sum of $46.64, leaving a balance due and payable of $250.  The answer set up as a defense that the plaintiff became entitled, as the widow and beneficiary of Charles Mitterwallner, to the sum of $796.64, which sum the defendant duly paid to the plaintiff by a check or draft, which in distinct terms stated on the face thereof that the said sum was the amount due under her claim.  That the plaintiff accepted the said check or draft, and indorsed and deposited the same, and collected the said sum thereon, and has at no time rescinded, or offered to rescind or to return, the sum so paid to her, or any part thereof.  That the said sum was paid in full payment and settlement of her claim upon the defendant by reason of the death of her said husband.  That by section 18 of article 4 of the laws of the defendant, in force at the time of the death of the said Charles Mitterwallner, it was provided that:

"The claims of members committing suicide, sane or insane, shall be paid as follows: If suicide occurs within the period of five years after receiving a certificate, 25 per cent. of the face value of the certificate shall be paid to the beneficiary or beneficiaries; after five years, and up to ten years, 50 per cent. of the face value of the certificate, together with the return of all assessments collected over two per month, as per schedules of rates."

—That the said Charles Mitterwallner committed suicide by carbolic acid poisoning in about the month of July, 1900.  That the benefit payable on the death of said Charles Mitterwallner did not exceed in total the sum of $796.64, which sum was duly paid to the plaintiff in full settlement of her claim, and that the said sum so paid to her was knowingly received by her, and that the said plaintiff had been fully paid.

Upon the trial it was proved that the plaintiff's husband died on July 23, 1900, and that, upon the plaintiff's demand for payment of the amount due under the certificate, she received a draft for the sum of $796.64, and gave a receipt on the back of the certificate, which was introduced in evidence.  The check by which this payment was made was drawn on the treasurer of the defendant corporation, whereby he was directed "to pay to the order of Louise Mitterwallner seven hundred ninety-six and 64/100 dollars, being amount due under claim No. 808, and charge to beneficiary fund"; and this check was indorsed by the plaintiff as beneficiary.  At the same time there was indorsed on the back of the benefit certificate the following:

"Received New York August 6, 1900, from M. Beutler, Sec'y of Germania Lodge No. 31, K. & L. of G. Star for supreme lodge, the sum of seven hundred and ninety-six 64/100 dollars in full under this certificate.  But I accept the above amount under protest, $796 64/100.

"[Signed]                                    Louise Mitterwallner."

The plaintiff testified that this receipt was made in the presence of the secretary; that the secretary said that the lodge had made a new law about suicide, and that was what they wanted to take the $250 for; that the witness signed the receipt under protest—signed it before he gave her the draft; that Mr. Beutler told the plaintiff when this payment was made that, on account of the suicide law, the supreme lodge of the

Knights and Ladies of the Golden Star would only pay the sum called for by the draft, and when he had given her the draft, she signed the receipt on the back of the benefit certificate; that the plaintiff told him that she only took the draft under protest, and he said that was her business; that she said it was not right, and she was not satisfied; that she asked him how it came, and he said, "Well, it is a suicide case; this was a new law," to which the plaintiff replied that she knew nothing about the new law, whereupon he said it was all the supreme lodge would pay; that after the payment was made the plaintiff demanded the balance of $250, when the secretary of the supreme lodge told her that the coroner had made a certificate that the plaintiff's husband had committed suicide, and refused her demand for the balance. Upon this testimony both parties rested.

Counsel for the defendant moved to dismiss the complaint upon the ground, among others, that the defense set up in the answer of accord and satisfaction had been clearly established by the admission of the plaintiff. This motion was denied, and the defendant excepted, whereupon counsel for the plaintiff moved for the direction of a verdict for the amount of $250 and interest, which was granted, and excepted to by the defendant.

There was no request to submit any question to the jury, and the sole question which requires discussion is whether upon this evidence the defense of accord and satisfaction was established. The respondent in his brief makes a point based upon the failure of the case to contain a statement that the case contains all the evidence, in face of a distinct certificate of the trial judge that "the foregoing case contains all the evidence given upon the trial." Such an attempt to deceive the court cannot be passed without notice and condemnation.

It is not disputed but that under the certificate the plaintiff was entitled to receive the sum of $1,000 upon the death of her husband. The defense of accord and satisfaction was an affirmative defense, and the plaintiff was entitled to a verdict unless such defense was established. In Komp v. Raymond, 175 N. Y. 102, 67 N. E. 113, there was evidence of a contract by which the defendant employed the plaintiff to render services in the Empire of Japan, the plaintiff to receive therefor a certain number of dollars per year, a portion of which was to be paid each month in Japan; the balance to remain with the defendant until the termination of the agreement, at 6 per cent. interest. Upon the final termination of the employment, there was a dispute between the plaintiff and the defendant as to whether the plaintiff was to be paid for his services in Japanese yens or in American dollars; Japanese yens being worth about 50 cents in American currency. At the time this question arose, the plaintiff claimed to be entitled to about $7,000 American money, while the defendant claimed that he was entitled to only $1,250. That question being in dispute, the defendant offered to pay the plaintiff the amount according to his construction of the contract, when the plaintiff, according to his testimony, said:

"You pay me this money, and I will sign this receipt. If I can show or bring proof to you and convince you that you are wrong in having me sign this—insisting on my signing this—when I claim that it should be settled in dollars, will you pay me the balance of $5,715? I will sign the receipt on these conditions, if you will make that agreement with me."

To this the defendant's representative replied: "Yes; that seems fair," and the plaintiff then said: "Now, if you do not pay me that balance, I will take the thing to court, and we will leave it to a court and jury to settle." The defendant's representative replied: "That won't be necessary; I will agree to that." The plaintiff then said: "Now, you understand if you don't pay me that balance, that I shall take the whole thing to court for settlement," to which the defendant's representative replied, "All right," and the plaintiff took the check, and signed the receipt. This receipt was as follows:

"Rec'd payment, March 3d, 1896, twelve hundred and fifty dollars, being full payment of his contract expiring Jan. 1, 1896, with salary, int., and allowance, besides closing his acct. to March 1, 1896."

This court held that that receipt amounted to a release of the remainder of the defendant's indebtedness to the plaintiff. This, however, was reversed by the Court of Appeals, and it was held that this receipt was nothing more than an admission of the receipt of a certain amount of money in full for certain services and allowances, which closed the plaintiff's account; that although the receipt in form stated that it was received in full payment under the plaintiff's contract, and closed his account with the defendant, it was a mere admission of a past transaction or of an existing fact; that it was a mere acknowledgment that an amount of money had been received by the plaintiff in full payment of his account, and should be regarded as a receipt only, and not as a contract; that such a receipt is only a declaration that a sum has been paid in full of all claims of a certain kind, or of all demands; that such receipts furnish only prima facie evidence, and are valuable only as such; and it was held that, notwithstanding the form of this receipt, there was no final adjustment of the accounts between the plaintiff and the defendant, but that the plaintiff still retained the right to legally enforce the remainder of his demand.

In Simons v. American Legion of Honor, 178 N. Y. 263, 70 N. E. 776, the plaintiff sought to enforce a claim against the defendant under a benefit certificate of a policy of insurance, whereby the plaintiff's assignor became entitled to $5,000 upon proof of the death of the insured. When claim was made under this certificate of insurance, the defendant's representative insisted that the policy had been reduced to $2,000. The beneficiaries claimed $5,000, and were told by the defendant's representative that the sum admitted to be due would be paid only on condition that the beneficiaries sign the blank surrender form and give up the policy. The beneficiaries accepted the terms, signed the surrender certificate, delivered up the policy, and accepted and used the defendant's draft for $1,900, which was the amount conceded to be due by the defendant. There was no protest against the receipt of this smaller sum in full payment of the claim of the plaintiffs under the certificate. The Court of Appeals seem to have held that the surrender of the certificate without a consideration would be a bar to the plaintiff's claim, and that there being no evidence that the plaintiffs, when they surrendered the certificate and consented to its cancellation, discharged and canceled the policy and the liability of the defendant under it; the court saying:

"The surrender of the policy in this case, with the statement in writing that it was surrendered for cancellation, was evidence of an intention to discharge and cancel the policy. It was not only evidence of it, but evidence of such a vigorous character that, according to the opinion quoted [Larkin v. Hardenbrook, 90 N. Y. 333, 43 Am. Rep. 176], there could be no higher evidence of such an intention."

—And that the plaintiff's assignor, having received $1,900, which they admitted they were told they would not receive unless they did surrender the policy for cancellation, without evidence of any kind in contradiction of this evidence of intention, there was no question to be presented for submission to the jury; and Komp v. Raymond, supra, is distinguished, as the plaintiff in that case accepted the amount the defendant conceded to be due, and receipted for the same, but proved that he did so with the distinct understanding that if the defendant did not pay the balance, he (plaintiff) would take the thing to court, and leave it to a court and jury to settle. Applying the principle of the latter case, it would seem that, if the plaintiff had accepted this amount offered by the insurance company without any protest, and had by a formal instrument consented to a cancellation of the policy of insurance or certificate of membership, any claim or demand under such certificate would have been canceled and surrendered. But in this case there was no such claim. The plaintiff made a demand on the defendant for $1,000, as the benefit she was entitled to receive upon the death of her husband, and the defendant stated that they admitted there was due a certain sum, and offered to pay that sum. She accepted that sum, and signed the receipt under protest. It was proved that the receipt contained a statement that the amount paid was in full under the certificate; but the addition by the plaintiff to that statement that it was received under protest was a distinct statement that the plaintiff protested against the sum being received in full for her claim. Under any circumstances, the receipt was not a contract, and the testimony of the plaintiff, taken in connection with the protest made by her, would sustain a finding that the receipt of a part of the money was not to be considered as an accord and satisfaction of the plaintiff's claim, but was a simple willingness to accept on account what the defendant conceded to be due to her. The receipt in Komp v. Raymond, supra, was in full payment of the plaintiff's contract expiring January 1, 1896, with salary and interest, besides closing his account to March 1, 1896—a muct more comprehensive receipt than the one given in this case, and without the protest that is here presented.

I think, therefore, there was at least a question of fact as to whether the admission or declaration in the receipt and upon the draft received was an accord and satisfaction, and as both parties moved for the direction of a verdict, and there was no request to submit this question to the jury, the determination of the court stands as a determination of the question of fact, and the verdict is therefore sustained by the evidence.

The only other question presented is as to an amendment made upon the trial, changing one letter in the plaintiff's name, which was erroneous in the name as written in the summons and complaint. It is clear that this is a mere formal amendment to conform the pleadings to the proof, and does not in any sense change the cause of action, and that the defendant was in no way injured.

· It follows that the judgment appealed from should be affirmed, with costs. All concur, except LAUGHLIN, J., who dissents.

LAUGHLIN, J. (dissenting). I am of opinion that this case should have been submitted to the jury. At the close of the plaintiff's case, the defendant moved to dismiss the complaint, on the ground, among others, that the defense of accord and satisfaction had been established. The motion was denied, and an exception taken. The defendant then rested its case, and the plaintiff moved for the direction of a verdict for the amount claimed, with interest. This motion was granted, and the defendant excepted. The complaint alleged that the plaintiff died on the 23d day of July, 1900, holding a certificate of membership in the defendant, by virtue of which she became entitled to $1,046.64; that $796.64 had been paid on account, and that the balance of $250 was due and payable. The answer alleged that the member committed suicide, and in consequence thereof, by virtue of an express provision of the contract, only 75 per cent., together with some additional assessments, aggregating the amount already paid, became payable on the certificate, and that the plaintiff accepted the same in full accord and satisfaction of her claim. The plaintiff testified that at the time she received the payment, which the defendant claims was in full settlement of the claim, she signed a receipt, indorsed on the benefit certificate, reciting that she received "the sum of $796 64/100 in full under this certificate. But I accept the above amount under protest." It does not appear whether she had possession of the benefit certificate at the time of her husband's death, and surrendered it to the defendant, in which case it is clear that she could not have maintained this action (Larkin v. Hardenbrook, 90 N. Y. 333, 43 Am. Rep. 176; Simons v. American Legion of Honor, 178 N. Y. 263, 70 N. E. 776), but the inference is that when she received the payment, the benefit certificate, with her indorsement thereon, was left with the defendant, for the defendant produced it upon the trial. She testified on cross-examination that the secretary of the subordinate lodge of the defendant, to which her husband belonged, who gave her the draft, and exacted as a condition that she sign this receipt, told her before he delivered the draft that, owing to the fact that her husband committed suicide, the defendant "would only pay the sum that is named in this draft." She further testified that she signed the draft under protest, and "was not satisfied with the money," and further, "He gave me the draft; put it on the table. I said 'that is not right.' I only took it under protest. Of course, I wanted the $250 more. He said 'It is my business, what I do.' I took the draft and gave a receipt." That he "said that was all the supreme lodge would pay. I took the draft, and signed this receipt under protest." That after she got the money, she demanded the balance, and it was refused. That Mr. Lacey, the defendant's supreme secretary, then told her the defendant "would not pay any more money. I said I will go to court." The draft was on the supreme treasurer of the defendant, and directed him to pay to the order of the plaintiff $796.64, "being the amount due under claim No. 808, and charge to beneficiary fund." It was drawn by the supreme director and secretary. The plaintiff indorsed the draft and collected

the money. If upon this evidence it could not be said as matter of law that this constituted an accord and satisfaction, the case at least should have been submitted to the jury. The evidence would fairly warrant the finding that the defendant made the payment upon the condition that it was in full settlement of the claim, and that the plaintiff, although claiming more and protesting, did not reserve the right to bring an action for the balance. If the plaintiff was unwilling to accept the draft on the condition offered, as shown by the form of receipt, viz., in full settlement of the claim, the defendant had the right to withhold payment. It was an unliquidated claim, within the rule relating to accord and satisfaction; the defendant conceding its liability in the amount for which the draft was given, and the plaintiff claiming a greater liability. In these circumstances it is well settled that an acceptance of the amount which the defendant conceded was owing in full settlement of the claim constitutes an accord and satisfaction, and the plaintiff could not thereafter recover the balance of her claim on the theory that, inasmuch as the defendant only paid the amount it conceded was due, there was no consideration. Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695; Jackson v. Volkening, 81 App. Div. 36, 80 N. Y. Supp. 1102, and cases cited; affirmed 178 N. Y. 562, 70 N. E. 1101.

There is no evidence that the defendant interposed the claim that its liability was limited to 75 per cent. in bad faith, and therefore, even though the claim in that regard may have been erroneous either on the facts or law or both, the settlement nevertheless constituted an accord and satisfaction. Simons v. American Legion of Honor, 178 N. Y. 263, 70 N. E. 776, and cases supra.

The fact that the plaintiff indorsed on the receipt above her signature that she accepted the amount under protest did not vary the effect of the receipt and settlement. Simons v. American Legion of Honor, supra.

I am of the opinion that the case of Komp v. Raymond, 175 N. Y. 102, 67 N. E. 113, is not opposed to these views. There a check for the amount defendant conceded to be due was accepted and a receipt in full signed. The plaintiff offered to show that he accepted the money and signed the receipt upon the express parol agreement that, if the defendant did not pay the balance claimed by the plaintiff, he was to be at liberty to sue therefor; and the plaintiff also offered to show that the defendant's refusal to admit his liability for the full amount claimed was not in good faith. This evidence was excluded, and the Court of Appeals held that it should have been admitted, upon the ground that the paper signed, being a receipt merely, and not embodying any agreement, was subject to explanation, modification, or contradiction by parol; and that if the defendant's claim in reduction of the liability was not made in good faith, the settlement was not binding. The case of Laroe v. Sugar Loaf Dairy Co., 180 N. Y. 367, 73 N. E. 61, is also clearly distinguishable. That was an action for balance due for milk delivered under a contract. The contract was made by the secretary of the defendant. After receiving milk for a period, the defendant repudiated the contract as unauthorized, and notified the plaintiffs that, if they continued to deliver milk, it must be at the price paid during the previous year before the contract was made; but the

plaintiffs did not acquiesce in this. They notified the defendant that they regarded the contract as valid, and intended to deliver milk thereunder, and that if the defendant paid less than the contract price, it would be credited on the account, and they would sue for the balance. After this notice, the defendant continued to receive milk from the plaintiffs, and from time to time rendered statements, at the foot of which was "To check in full." The checks did not recite that they were in full payment. The plaintiffs used the checks,. but gave no receipt. It was held that this did not constitute an accord and satisfaction, and that the plaintiffs were entitled to recover according to contract. Here if the plaintiff had refused to accept the draft in full settlement of the claim, and had asserted her intention of suing for the full amount of the claim, or with the consent of the defendant's officers had accepted the draft on the understanding that it was to be without prejudice to her right to sue for the balance, or had expressly reserved her right to sue for the balance, then the receipt and the draft could be explained, and it would appear that there was not a final settlement made. She merely signed the receipt and accepted the draft under protest, but gave no notice to the defendant that she intended to sue for the balance until after she received the draft, when she demanded the balance, and stated that she would bring an action. I am inclined to the view that, as matter of law, on this evidence the plaintiff accepted the draft on the terms offered by the defendant in full settlement of her claim; but certainly, at most, this was a question for the jury, and could not have been resolved against the defendant as matter of law.