### SCHWARTZMAN v. POST et al.

(Supreme Court, Appellate Term. November 12, 1903.)

1. NOTE—DISCHARGE.

Under the Negotiable Instruments Law, § 200, subd. 5 (Laws 1897, p. 744, c. 612), providing that a negotiable instrument is discharged when the principal debtor becomes the holder in his own right at or after maturity; section 2, p. 720, defining the holder as the payee or indorsee in possession; and section 3, defining the person primarily liable as the person who, by the terms of the instrument, is absolutely required to pay the same—a demand note is discharged, and the maker freed from liability thereon, when an indorsee, upon payment of a portion of the face of the note, voluntarily surrenders it to the maker, though the maker promises at the time to pay the balance.

Appeal from City Court of New York, Trial Term.

Action by Abraham Schwartzman against Joshua L. Post and another. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

Lewison, Kohler & Schattman, for appellants.

Charles S. Rosenthal, for respondent.

FREEDMAN, P. J. This action was brought to recover an alleged balance of $1,750, claimed to be due upon a demand note for $5,000, dated May 1, 1899, payable to the order of the maker, the defendant Post, and indorsed by him and his father, the defendant Postawalsky. Postawalsky was not served with the summons and did not appear. After a trial by a jury, a verdict for the amount claimed was rendered in favor of the plaintiff. The plaintiff's complaint originally averred that he is "now the lawful owner and holder" of the note in suit, but it was subsequently amended by striking out the allegation that plaintiff was the "holder." The answer denied the delivery of the note to the plaintiff, and that he was the owner thereof, and set up, among other defenses, that the note had been delivered up and surrendered to Post, the maker, about April 9, 1900, and that defendant had ever since been the holder thereof. At the beginning of the trial, the note, in pursuance of a notice given by

plaintiff's attorney, was produced by the defendant Post, and by plaintiff's attorney offered and received in evidence. The testimony of the transaction out of which the cause of action arose, as given by the parties, is very conflicting, and a reading of the record convinces one that neither party has given a complete statement of the facts. The plaintiff's version, however, was accepted and believed by the jury, and must, therefore, for the purposes of this appeal, be taken as true, and, briefly stated, is as follows: In 1898 plaintiff and the defendant Postawalsky were copartners in the cloak business. This partnership was dissolved by mutual consent in 1899, and plaintiff received the note in question for his interest in said business. Subsequently, upon demanding payment of the note of the defendant, Post told the plaintiff that he (Post) could not pay the full amount of the note, but would pay $2,000 if the plaintiff would give up the note. This offer was afterwards increased by Post to the sum of $2,500. Plaintiff then authorized his brother (Schwartz) to continue the negotiations with Post. For some reason, not appearing, the plaintiff had placed the note with one Kohn, who testifies that he also called upon Post in regard to obtaining payment of the note, and that Post refused to pay in full. Plaintiff's brother (Schwartz) testifies to similar conversations with Post. In all of the conversations Post is alleged to have said, in substance, that, unless the amount offered was accepted by the plaintiff, and the note given up, Post would "protect himself," "I have been through the mill once before, and know how to take care of myself." These witnesses also testify that Post promised to pay the balance of his indebtedness, but insisted upon the surrender of the note to him. Matters between the parties culminated in a meeting of Post, Kohn, one Kohler, attorney for Post, one Essberg, attorney for plaintiff or his brother, Schwartz, and Schwartz, at Essberg's office, at which time Post paid $2,750 and Essberg $500 to Schwartz, who then gave the note to Essberg. The $3,250 was then paid plaintiff, and the note eventually given to Post, although when Post came into possession of the note does not appear, nor is it shown for what reason Essberg contributed the sum of $500 towards the amount paid the plaintiff. At the close of the plaintiff's case, and again at the close of the whole case, the defendants' attorney moved to dismiss the complaint upon the ground that "the plaintiff has failed to establish a cause of action, and that upon the ground that by his own admission of the delivery and surrender of the note by him to the defendant he extinguished any liability on the note." "My contention is that the delivery of the note by the plaintiff to the defendant constituted a discharge and cancellation of the note."

I am of the opinion that the defendant is right in this contention. The cause of action is based wholly upon the note. Subdivision 5 of section 200 of the Negotiable Instruments Law (Laws 1897, p. 744, c. 612) provides that a negotiable instrument is discharged "when the principal debtor becomes the holder of the instrument at or after maturity in his own right." The instrument in question was a negotiable note. The term "holder" is defined in section 2, p. 720, as follows: "Holder means the payee or indorsee of a bill or note who

is in the possession of it, or the bearer thereof;" and section 3 contains the following definition: "Person primarily liable on instrument. The person primarily liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay the same." The words of subdivision 5 of section 200, "in his own right," merely exclude such a case as that of a maker acquiring the instrument in purely a representative capacity. The case at bar comes exactly within these provisions. Post was the maker of the note, and primarily liable thereon. It was surrendered to him, and he became the "holder" thereof without fraud or mistake, in "his own right." Prior to the adoption of the negotiable instruments act it has been held that, if a note be surrendered by the payee to the maker, the whole claim is discharged. Jaffray v. Davis, 124 N. Y. 164–170, 26 N. E. 351, 11 L. R. A. 710; Ellsworth v. Fogg, 35 Vt. 355; Kent v. Reynolds, 8 Hun, 558; Beach v. Endress, 51 Barb. 570, affirmed in Larkin v. Hardenbrook, 90 N. Y. 333, 43 Am. Rep. 176. Whether the plaintiff can maintain an action upon the original indebtedness, or upon the defendant's promise to pay the balance due, the consideration therefor being the plaintiff's surrender of the note, need not now be determined.

As the foregoing views necessitate a reversal of the judgment, the other alleged errors need not be considered.

Judgment reversed, and new trial ordered, with costs to the appellants to abide the event. All concur.